# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DISTRICT ATTORNEY OF CLEARFIELD COUNTY, <br><br> *Plaintiff,* <br><br> vs. <br><br> PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; NORAMCO, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. N/K/A JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC. N/K/A JANSSEN PHARMACEUTICALS, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; PAR PHARMACEUTICAL, INC.; PAR PHARMACEUTICALS COMPANIES, INC.; MCKESSON CORPORATION; CARDINAL HEALTH, INC.; AMERISOURCEBERGEN DRUG CORPORATION; ANDA, INC.; H.D. SMITH WHOLESALE DRUG COMPANY; VALUE DRUG COMPANY; RICHARD S. SACKLER; JONATHAN D. SACKLER; MORTIMER D.A. SACKLER; KATHE A. SACKLER; ILENE SACKLER LEFCOURT; BEVERLY SACKLER; THERESA SACKLER; DAVID A. SACKLER; RHODES TECHNOLOGIES; RHODES TECHNOLOGIES, INC.; RHODES PHARMACEUTICALS L.P.; RHODES PHARMACEUTICALS, INC.; TRUST FOR THE BENEFIT OF MEMBERS OF THE RAYMOND SACKLER FAMILY; THE P.F | C.A. No. _____ <br><br> (Removal from: The Court of Common Pleas of Delaware County) |

LABORATORIES, INC.; STUART D.
BAKER; ALLERGAN PLC F/K/A
ACTAVIS PLC; ALLERGAN FINANCE
LLC; WATSON PHARMACEUTICALS,
INC. N/K/A ACTAVIS, INC.; WATSON
LABORATORIES, INC.; ACTAVIS, LLC;
ACTAVIS PHARMA, INC. F/K/A
WATSON PHARMA, INC.;
MALLINCKRODT PLC;
MALLINCKRODT LLC; SPECGX LLC;
CVS HEALTH CORPORATION; CVS
PHARMACY, INC.; CVS INDIANA, LLC;
CVS RX SERVICES, INC.; CVS TN
DISTRIBUTION, LLC.; CVS OF
PENNSYLVANIA, INC.; CVS PA
DISTRIBUTION, LLC.; RITE AID
CORPORATION; RITE AID OF
MARYLAND, INC., D/B/A RITE AID
MID-ATLANTIC CUSTOMER SUPPORT
CENTER, INC.; RITE AID DRUG
PALACE INC.; RITE AID OF
PENNSYLVANIA, INC; RITE AID OF
PENNSYLVANIA, LLC; GIANT EAGLE,
INC.; GIANT EAGLE DRUGS; AHOLD
USA INC.; THE GIANT COMPANY LLC;
WAL-MART INC.,

        *Defendants.*

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1331, 1441, 1446, and 1367 with full reservations of defenses, including its objection to personal jurisdiction, Defendant CVS Pharmacy, Inc. ("CVS") gives notice of the removal of this action originally filed in the Court of Common Pleas of Clearfield County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania. In support of removal, CVS provides this "short and plain statement of the grounds for removal." 28 U.S.C.

§ 1446(a); *Dart Cherokee Basis Operating Co., LLC* v. *Owens*, 574 U.S. 81, 87, 135 S. Ct. 547, 553 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

## I.   NATURE OF THE REMOVED ACTION.

1.      The allegations in this case are substantively similar to those in *Bedford County* v. *Purdue Pharma L.P., et al.,* Case No. 2:20-cv-01385-JS (E.D. Pa. 2020) and *Adams County* v. *Purdue*, Case No. 2:19-cv-04438 (E.D. Pa. 2019),[1] which were removed by CVS and transferred by the Judicial Panel on Multidistrict Litigation ("JPML") to the Opiate MDL. JPML Dkt. No. 7035, 7713.

2.      On August 21, 2020, Plaintiff District Attorney of Clearfield County filed a complaint in the Court of Common Pleas of Clearfield County, Civil Division, for claims relating to prescription opioid medications.[2] Plaintiff alleges claims against three defendant groups ("Defendants"): Manufacturer Defendants, Distributor Defendants, and Pharmacy Defendants. Plaintiff asserts claims against the Pharmacy Group for their role as "both Distributors and Retailers of prescription

---

[1] The allegations are also substantively similar to three other cases CVS recently removed to this Court—*Lower Makefield Township* v. *Purdue Pharma L.P.*, Case No. 2:20-cv-03695-JS (E.D. Pa. 2020), *Laborers' District Council Building and Construction Health and Welfare Fund* v. *Purdue Pharma L.P.,* Case No. 2:20-cv-04804-JS (E.D. Pa. 2020), and *Sheet Metal Workers Local 19 Health Fund* v. *Purdue Pharma L.P.,* Case No. 2:20-cv-04805-JS (E.D. Pa. 2020). CVS expects that these cases will be transferred to the Multidistrict Litigation in the Northern District of Ohio ("Opiate MDL") at one of the JPML's upcoming hearing sessions.

[2] The caption of the Complaint identifies Plaintiff as the "District Attorney of Clearfield County," but Plaintiff later avers that it is "the Commonwealth of Pennsylvania . . . acting by and through Ryan P. Sayers, the District Attorney of Clearfield County." Compl. at 1.

opioids." Compl. at ¶ 143.[3]

3.      Plaintiff brings claims related to prescription opioid medications, including claims for (1) violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 – 201-9.3; and (2) civil conspiracy for unlawful distribution practices. Plaintiff seeks civil penalties, damages and equitable relief for alleged injuries to Clearfield County, the District Attorney, and "affected residents and other persons of interest [within Clearfield County]." Compl. ¶ 635.

4.      This action is one of over 3,000 opioid lawsuits filed by government entities and other plaintiffs against manufacturers, distributors, and retailers of prescription opioid medications. Plaintiff alleges that Defendants are liable for the economic and non-economic injuries suffered by Plaintiff and its residents, including third-party payors who paid opioid-related claims, and opioid-addicted individuals.

5.      On December 5, 2017, the JPML created the Opiate MDL for cases just like this one—cases in which "cities, counties and states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates." *In re Nat'l*

---

[3] *See* Compl. ¶ 142 ("AmerisourceBergen, Cardinal, McKesson, Anda, H.D. Smith, Walmart, CVS, Rite Aid, Giant Eagle, Giant/Martin's, and Value Drug are referred to collectively herein as the 'Distributor Defendants.'")

*Prescription Opiate Litig.*, MDL No. 2804, Dkt. No. 1 (Dec. 12, 2017 Transfer Order) (attached hereto as **Exhibit 1**). To date, over 2,000 actions have been transferred to the Opiate MDL.

6.    Plaintiff's 169-page Complaint resembles virtually all of the complaints filed in the Opiate MDL. The bulk of the allegations in these complaints have been levied by plaintiffs against the manufacturers for alleged deceptive marketing of prescription opioids from approximately the 1990s to present. In fact, the allegations against the manufacturers and distributors here are nearly identical to those asserted in *The County of Summit, Ohio, et. al.* v. *Purdue Pharma L.P., et al.*, MDL No. 17-md-2804, Case No. 1:18-op-45090, a bellwether case currently being litigated in the Opiate MDL. Plaintiff specifically alleges that its Complaint is similar to the *County of Summit* case: "The first two bellwether plaintiffs [in the Opiate MDL], Cuyahoga County, OH and Summit County, OH, were set to being [*sic*] trial against Manufacturers and Distributors of opioids ***based on the same or similar conduct alleged herein***." Compl. ¶ 435 (emphasis added).

7.    In addition, Plaintiff's Complaint is substantively similar to an action brought by Carbon County, Pennsylvania and removed to this Court by Defendant Walgreens on December 31, 2018. *County of Carbon* v. *Purdue Pharma L.P.*, No. 2:18-cv-05625, E.D. Pa. Dkt. No. 1 (E.D. Pa., Dec. 31, 2018). On March 12, 2019, Chief Judge Juan R. Sanchez stayed proceedings pending decision on transfer by the JPML. In doing so, Chief Judge Sanchez recognized that "a stay would promote judicial economy by conserving the parties' resources, avoiding duplicative litigation, and

preventing inconsistent rulings." *See id.*, E.D. Pa. Dkt. No. 51. (Walgreens later consented to remand of the Carbon County action while that action was pending in the Opiate MDL. But nothing about that remand affects the removability of this action or changes the analysis of whether similar actions should also be transferred to the Opiate MDL.)

8.     The gravamen of Plaintiff's Complaint is that certain so-called Manufacturer Defendants made various "misrepresentations and omissions" regarding the safety and efficacy of opioids as "part of an organized effort to penetrate the market for pain medication and convince prescribers, third-party payors, PBMs, and the public that opioids can and should be used to treat chronic pain." Compl. ¶ 320.

9.     Plaintiff also alleges that certain Distributor Defendants "knew that sales of prescription opioids increased rapidly in Pennsylvania and Clearfield County during the relevant time period, and yet continued to supply prescription opioids in dangerous quantities to retailers and health care providers." Compl. ¶ 452. Moreover, Plaintiff claims that the Distributor Defendants "failed to identify and report suspicious orders of opioids to the appropriate regulatory agencies . . . ." *Id.* at ¶ 161.

10.     Plaintiff further contends that, "[a]s Distributors, the Pharmacy Defendants are liable just [like] the other Distributor[s] for the failure of their common law duty to monitor report, investigate and halt suspicious orders . . . ." Compl. ¶ 494. Plaintiff contends that the "Pharmacy Defendants also failed to act in accordance with the duty required by a responsible retailer of dangerous drugs by

failing to perform due diligence with respect to opioid orders . . . ." *Id.* at ¶ 502.

11.    Based on these allegations, Plaintiff claims a litany of injuries from the alleged abuse of addictive opioids by residents of Clearfield County. According to Plaintiff, "[t]he prescription opioid epidemic has devastated communities like Clearfield County, where the costs are shared by individuals who have never taken opioids." Compl. ¶ 567.

## II.    BASIS OF REMOVAL

### A. FEDERAL QUESTION

12.    Removal is proper under 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a substantial federal question under the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801, *et seq.*).

13.    The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

14.    "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc.* v. *Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

15.    Even when state law creates the causes of action, a petition may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc.* v. *Thompson*, 478 U.S. 804, 808-09 (1986) (quoting *Franchise Tax Bd.* v. *Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)); *see also Wullschleger* v.

*Royal Canin US.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) ("Plaintiffs' dependence on federal law permeates the allegations such that the [state law] antitrust and unjust enrichment claims cannot be adjudicated without reliance on and explication of federal law."); *Gully* v. *First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[4]

16.    "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn* v. *Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods.,*

---

[4] CVS need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer* v. *Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior holdings in *Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U.S. 100 (1941), and its antecedents that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception.*" (emphasis added)); *see also Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims* v. *Arrow Financial Services, LLC* held: "'Divestment of district court jurisdiction' should be found 'no more readily than 'divestment of state court jurisdiction,' given 'the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331.'" 565 U.S. 368, 379 (2012) (alterations omitted) (quoting *ErieNet, Inc.* v. *Velocity Net, Inc.*, 156 F.3d 513, 523 (3d Cir. 1998) (Alito, J., dissenting)).

*Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

17.     When a purported state law claim is premised on violations of duty contained in a federal statute, a federal court has jurisdiction over that claim. *See Bd. of Comm'rs of Se. La. Flood Protection Authority-East* v. *Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722-23 (5th Cir. 2017) (concluding that federal question jurisdiction exists because claims were premised on the failure to satisfy a standard of care established in federal statute). Federal jurisdiction is established if there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," because the absence of any such state source "means that the duty would have to be drawn from federal law." *Id.* at 723. A claim premised on the breach of such a duty "cannot be resolved without a determination whether . . . federal statutes create [such] a duty," and therefore necessarily raises a federal question. *Id.*; *see also Hughes* v. *Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170-71 (5th Cir. 2012) (plaintiff's state law claims gave rise to federal question jurisdiction because resolution of claims relied on duty contained in federal law).

18.     As set forth below, Plaintiff's claims meet all four requirements.

19.     Although Plaintiff contends that "the claims alleged in the Complaint do not permit federal question jurisdiction to be exercised as the claims do not arise

directly or indirectly under the Constitution, laws or, or treaties of the United States," Compl. ¶ 33, the underlying theory of liability is based on alleged violations of federal law or alleged duties arising out of federal law, specifically the federal CSA, and its implementing regulations, *i.e.*, that a portion of the Pharmacy Defendants' otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of allegedly suspicious orders that the Pharmacy Defendants had a duty to "monitor, report, and halt[.]"[5] *Id.* at ¶ 611.

20.    For instance, Plaintiff pleads that CVS and the other Distributor Defendants violated federal law with, among others, the following allegations:

a.    "The PCSA tracks and incorporates federal regulations that require the Distributor Defendants to 'design and operate a system to disclose . . . suspicious orders of controlled substances . . . .' 35 P.S. ¶ 780-112(c) (incorporating 21 C.F.R. § 1301.74(b))." *Id.* at ¶ 443.

---

[5] Plaintiff relies on the Pennsylvania Controlled Substance, Drug, Device, and Cosmetic Act ("PCSA"), 35 P.S. § 780, *et seq.* Complaint ¶ 439. But this statute does not establish a duty to report or halt suspicious orders. For example, Plaintiff cites 35 P.S. § 780-112(c) for the proposition that the PCSA "require[s] the Distributor Defendants to 'design and operate a system to disclose . . . suspicious orders of controlled substances . . . Suspicious orders include orders of unusual size, orders deviating substantially from a normal patter, and orders of unusual frequency.' 35 P.S. § 780-112(c) (incorporating 21 C.F.R. § 1301.74(b))." *Id.* at ¶ 443. But 35 P.S. § 780-112(c) does not contain the above-quoted language. It merely requires persons registered under the PCSA to "keep records and maintain inventories in conformity with the record-keeping, order form and inventory requirements of Federal law and with any additional regulations the secretary issues." 35 P.S. § 780-112(c). And even if it did, such language would only confirm that suspicious order reporting duties stem from federal law, not state law.

Plaintiff further claims that, under the PCSA and the Pennsylvania Wholesale Prescription Drug Distributors License Act ("WPDDLA"), 63 P.S. § 391, *et seq.*, the "Distributor Defendants are required to establish effective controls against suspicious orders to prevent prescription drugs from being diverted into the community, including . . . [r]eporting suspicious orders of controlled substances, including prescription opioids, to alert regulatory and law enforcement officials when it appears that prescription drugs are being diverted for illegal use." Complaint ¶ 444. But again, neither statute requires the reporting of "suspicious orders."

b. "Pursuant to the **Federal CSA**, PACSA, and the WPDDLA, Defendants are required to establish effective controls to defeat and prevent suspicious orders of opioids from being filled and the diversion of drugs in the community." *Id*. at ¶ 496 (emphasis added).

c. "The Department of Justice confirmed the suspicious order obligations clearly imposed by federal law upon opioid manufacturers . . . ." *Id*. at ¶ 530.

d. "[A]ll of the Defendants have misrepresented their compliance with Pennsylvania and federal law." *Id*. at ¶ 537.

e. "Defendants . . . ma[de] false statements to authorities, the public, and others regarding their compliance with state and federal laws that were aimed at controlling diversion." *Id*. at ¶ 546.

f. "Defendants intentionally misrepresented their compliance with their affirmative legal obligations to monitor, report, and halt suspicious orders of prescription opioids, and misrepresented their efforts to prevent diversion of and addiction to opioids." *Id*. at ¶ 633(i).

21.   The source of the asserted legal duties to prevent diversion and to monitor, investigate, and report suspicious orders of controlled substances is the CSA and its implementing regulations. *See* 21 U.S.C. § 823(b), (e); *id*. § 832; *id*. § 842(c)(1)(B); 21 C.F.R. §§ 1301.71, .74(b).

22.   As mentioned above, Plaintiff also alleges that the Pharmacy Defendants failed to "halt suspicious orders" of prescription opioids. Compl. ¶ 611. But the source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice. The DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e),

to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc.* v. *DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (DEA July 3, 2007), as source of DEA's "Shipping Requirement").

23.    Plaintiff's theories of liability against CVS and the other Defendants, as pleaded in the Complaint, are thus predicated on allegations that Defendants breached alleged duties under the CSA to implement effective controls against diversion and to detect and report "suspicious" orders for prescription opioids.

24.    The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

25.    ***First***, Plaintiff's state law claims "necessarily raise" a federal question. That is because Plaintiff's asserted right to relief under state law necessarily requires resolution of a federal question. *Virgin Islands Hous. Auth.* v. *Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles.") (emphasis added); *Tenn. Gas Pipeline Co.*, 850 F.3d at 722-23 (federal question necessarily raised where negligence and public nuisance claims relied on the court's

12

interpretation of the scope of a duty of care contained in federal law); *Hughes*, 478 F. App'x at 170-71; *see also North Carolina ex rel. N.C. Dep't of Admin.* v. *Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *NASDAQ OMX Grp., Inc.* v. *UBS Sec. LLC*, 770 F.3d 1010, 1021-23 (2d Cir. 2014) (a duty derived from the Exchange Act to operate a fair and orderly market underpinned plaintiff's contract and tort claims and therefore necessarily raised a federal question).

26.    Plaintiff's conspiracy and Pennsylvania Unfair Trade Practices Act claims against CVS and the other Distributor Defendants require Plaintiff to establish that Defendants breached duties established exclusively under federal law by failing to monitor, investigate, and report shipments of otherwise lawful orders of controlled substances or by otherwise failing to maintain controls against diversion. Otherwise, Plaintiff could not establish that "Defendants intentionally misrepresented their compliance with affirmative legal obligations to monitor, report, and halt suspicious orders" in violation of the Pennsylvania Unfair Trade Practices Act. Compl. ¶ 633(i).

27.    The Complaint cites to various Pennsylvania laws it claims impose a duty on distributors of prescription medications to report or halt prescription orders, e.g., Compl. ¶¶ 439, 444, but none actually do. This is because, as explained above,

these duties necessarily arise under the federal CSA and regulations.

28.     While Plaintiff is the master of its petition, and it "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc.* v. *Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiff here relies on violations of federal law as the basis for its state-law claims.[6] And Plaintiff "may not defeat removal by omitting to plead necessary federal questions in a complaint." *Cahall* v. *Westinghouse Elec. Corp.*, 644 F. Supp. 806, 809 (E.D. Pa. 1986).

29.     In sum, despite Plaintiff's attempt to disguise the federal question, the Complaint necessarily raises a federal issue: whether the Distributor Defendants violated the CSA.

30.     **Second**, this federal issue is "actually disputed" because the parties disagree as to the existence and scope of alleged duties arising under the CSA and whether the Distributor Defendants violated any duties arising under the CSA. Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

---

[6] Furthermore, it is not necessary for federal jurisdiction that CVS establish that *all* of Plaintiff's counts raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago* v. *Int'l Coll. Of Surgeons*, 522 U.S. 156, 166 (1997). Because the Court has original jurisdiction over at least some counts against Defendant, it has supplemental jurisdiction over Plaintiff's remaining counts against Defendant, and other Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

31.     **Third**, the federal issue presented by Plaintiff's claims is "substantial."[7] "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine 'the development of a uniform body of [federal] law.'" *Id.* at 260-61 (first quoting *Grable*, 545 U.S. at 315; then quoting *Bonito Boats, Inc.* v. *Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

32.     Plaintiff's theories of liability necessarily require that a court determine a question relating to the important federal issue of regulation of controlled substances. Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st Cong., 2nd Sess. (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

---

[7] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the underlying merits of Plaintiff's claims and has no bearing on the strength of those claims. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

33.     The text of the CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801. Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*." *Anversa* v. *Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 n.5 (1st Cir. 2016).

34.     Plaintiff's attempt to enforce the federal CSA through its Pennsylvania Unfair Trade Practices and Consumer Protection Law claims raises a substantial federal question even though the federal CSA does not provide for a private right of action. In *Grable*, the Supreme Court held that lack of a federal cause of action does not foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and  convert[] a federal cause of action from a sufficient condition for federal question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g., Ranck* v. *Mt. Hood Cable Reg. Comm'n*, 2017 WL 1752954, at *4-5 (D. Or., May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under the Act).

35.     Removal is especially appropriate here because Plaintiff's action is one

16

of thousands of similar actions nationwide, most of which are pending in the MDL in the Northern District of Ohio. Indeed, Plaintiff claims that both the "opioid epidemic" and Defendants' alleged misconduct occurred on a national scale. *E.g,* Complaint ¶¶ 8, 567. And Plaintiff relies on enforcement actions and settlements in jurisdictions outside of Pennsylvania to establish wrongful conduct. *E.g., id.* ¶¶ 460-64, 469.

36.     ***Fourth***, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA— applies them. Federal jurisdiction is therefore properly exercised under § 1331 to resolve "disputed issues of federal law" under the CSA.

37.     In sum, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also Tenn. Gas Pipeline Co.*, 850 F.3d at 722-23; *Hughes*, 478 F. App'x at 170-71; *Gilmore* v. *Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a

substantial question of federal law.'" (quoting *Nicodemus* v. *Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006)).

38.     To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Defendants under the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367(a).

## III.   ALL PROCEDURAL REQUIREMENTS ARE MET.

39.     CVS has satisfied all the procedural requirements for removal under 28 U.S.C. § 1446.

40.     CVS is filing this Notice of Removal pursuant to 28 U.S.C. § 1441(a) in the United States District Court for the Eastern District of Pennsylvania, because the State court in which the action is pending, the Court of Common Pleas of Delaware County, is within this federal judicial district. This Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

41.     CVS has not yet been served in this action; therefore this removal is timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).

42.     In accordance with 28 U.S.C. § 1446(a), a copy of "all process, pleadings, orders, and other documents then on file in the State Court," are attached as **Exhibit 2**.

43.     In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice, CVS will "give written notice thereof to all adverse parties," and will "file a copy of

the notice with the clerk" of the Court of Common Pleas. A true and correct copy of the Notice to Plaintiff and Notice to the State Court of Filing of Notice of Removal will be filed as separate documents.

44.     In accordance with 28 U.S.C. § 1446(b)(2)(A), and as set forth in **Exhibit 3**, all defendants that are not subject to a bankruptcy stay or injunction and that have been properly joined and served[8] in this action join in or consent to this removal.[9]

---

[8] Many of the defendants listed in Exhibit 3 have not been properly served or properly joined, but they nevertheless consent to the removal in an abundance of caution.

[9] On September 15, 2019, Purdue Pharma L.P. and its affiliated debtors, including Rhodes Technologies and its affiliates, filed voluntary petitions for relief under chapter 11 of United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Purdue Pharma L.P.'s case is docketed as *In re Purdue Pharma L.P.*, No. 19-23649. Also on September 18, 2019, Purdue Pharma L.P. and its affiliated debtors filed a motion for preliminary injunction seeking an order staying certain active cases to the extent not already stayed by the automatic stay. On June 10, 2019, Insys Therapeutics, Inc. and its affiliates each filed a voluntary case under chapter 11 of United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, which cases are being jointly administered under Case No. 19-11292 (KG). Also on June 10, 2019, Insys filed a motion for preliminary injunction seeking an order staying certain active cases in which Insys had already been served, to the extent not already stayed by the automatic stay. On July 2, 2019, the Bankruptcy Court stayed all actions that were the subject of the preliminary injunction motion, except for actions in which certain plaintiffs resolved the motion with Insys prior to July 2, 2019. On July 9, 2019 the Court in the Delaware County, PA Coordinated Proceedings, Case No. CV-2017-008095, entered an order staying all cases as to Insys within the Coordinated Proceedings, and ordered that such stay would remain in effect pending further order of the Court. As the present case was within the Coordinated Proceedings at the time of removal, the stay as to Insys remains in effect. Similarly, on October 12, 2020, Mallinckrodt plc and its affiliates commenced bankruptcy cases in the United States Bankruptcy Court for the District of Delaware. As bankrupt parties, the consent of Insys, Purdue, Mallinckrodt and their affiliated debtors is not required. *See Livaccari* v. *Zack's Famous Frozen Yogurt,* 1992 WL 178734 at *5 (E.D. La. 1992) ("[the defendant's] bankruptcy and the applicability of the stay order therein eliminate the necessity for [the defendant] to have joined in the notice of removal"); *Consumers Distrib. Co.* v. *Telesave Merch. Co.,* 553 F. Supp. 974, 975-76 (D.N.J. 1982); *Wallis* v. *Southern Silo Co.,* 369 F. Supp. 92, 96097 (N.D. Miss. 1973). Further, defendant Beverly Sackler has passed away, so her consent is not required. *See* Suggestion of Death, *In re Purdue Pharma L.P.*, No. 19-23649 (RDD), Dkt. 301 (Bankr. S.D.N.Y. Oct. 14, 2019).

45.     Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment CVS's or any other defendants' right to assert any and all defenses or objections to the Complaint, including lack of personal jurisdiction.[10] If there are any questions that arise as to the propriety of removal of this action, CVS respectfully requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal of this case.

Dated:          October 16, 2020                    Respectfully submitted,


                                                     */s/ Mark D. Villanueva*
                                                     Mark D. Villanueva (Atty I.D. No. 89892)
                                                     STRADLEY RONON STEVENS & YOUNG, LLP
                                                     2005 Market Street, Suite 2600
                                                     Philadelphia, PA 19103
                                                     T: (215) 564-8000
                                                     E: mvillanueva@stradley.com

                                                      – and –

                                                     Conor B. O'Croinin, Esquire
                                                     (national counsel;  Atty I.D. No. 200149)
                                                     ZUCKERMAN SPAEDER LLP
                                                     100 East Pratt Street, Suite 2440
                                                     Baltimore, Maryland 21202
                                                     T: (410) 949-1160
                                                     E: cocroinin@zuckerman.com

                                                     *Counsel for CVS Pharmacy, Inc.*

---

[10] CVS also does not concede that it is the properly named CVS entity.

20

| | |
|---|---|
| **DISTRICT ATTORNEY OF CLEARFIELD COUNTY,** | **COURT OF COMMON PLEAS DELAWARE COUNTY, PENNSYLVANIA** |
| **Plaintiff,** | |
| **v.** | **No. 2017-CV-008095** |
| | **Coordinated Civil Proceedings** |
| **PURDUE PHARMA L.P.,** *et al.*, | |
| **Defendants.** | |

## CERTIFICATE OF SERVICE

I, Mark D. Villanueva, hereby certify that the Notice of Removal was filed with the Court's electronic filing system, and a true and correct copy was served on counsel listed below via electronic mail.

Dated: October 16, 2020                                     Respectfully submitted,

 */s/ Mark D. Villanueva*
Mark D. Villanueva (Atty I.D. No. 89892)
STRADLEY RONON
STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
T: (215) 564-8000
E: mvillanueva@stradley.com

 – and –

Conor B. O'Croinin, Esquire
(national counsel;  Atty I.D. No. 200149)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
T: (410) 949-1160
E: cocroinin@zuckerman.com

*Counsel for CVS Pharmacy, Inc.*

| **Counsel** | **Party** |
|---|---|
| Ryan P. Sayers<br>District Attorney of Clearfield County<br>Clearfield County Courthouse Annex<br>230 East Market Street<br>Clearfield, PA 16830<br>rsayers@clearfieldco.org<br><br>Harris L. Pogust, Esquire<br>Tobias L. Millrood, Esquire<br>Gabriel C. Magee, Esquire<br>POGUST MILLROOD, LLC<br>161 Washington St., Suite 940<br>Conshohocken, PA 19428<br>(610) 941-4204<br>gmagee@pogustmillrood.com | Counsel for Plaintiff, District Attorney of Clearfield County |
| Charles C. Lifland<br>O'MELVENY & MYERS LLP<br>400 S. Hope Street<br>Los Angeles, CA 90071<br>(213) 430-6000<br>clifland@omm.com | Counsel for Defendants Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc. |

| | |
|---|---|
| Harvey Bartle, IV, Esquire<br>MORGAN, LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, PA  19103<br>steven.reed@morganlewis.com<br>harvey.bartle@morganlewis.com<br><br>- and-<br><br>Maureen K. Barber, Esquire<br>MORGAN, LEWIS & BOCKIUS LLP<br>One Oxford Centre, Thirty-Second Floor<br>Pittsburgh, PA  15219-6401<br>maureen.barber@morganlewis.com<br><br>- and-<br><br>Stuart S. Smith, Esquire<br>Thomas Jackson Elliott, Esquire<br>ELLIOT GREENLEAF, P.C.<br>925 Harvest Drive<br>Blue Bell, PA 19422<br>sss@elliottgreenleaf.com<br>txe@elliottgreenleaf.com | Counsel for Defendants Cephalon, Inc., Teva Pharmaceuticals USA, Inc., Watson Laboratories, Inc., Watson Pharmaceuticals, Inc. n/k/a Actavis, Inc., Actavis, LLC, Actavis Pharma, Inc. (f/k/a Watson Pharma, Inc.), Allergan, PLC (f/k/a Actavis PLC), and Allergan Finance LLC |

| | |
|---|---|
| Joseph E. O'Neil, Esquire<br>Ryan J. O'Neil, Esquire<br>Andreas Ringstad, Esquire<br>CAMPBELL CONROY & O'NEILL, P.C.<br>1205 Westlakes Drive, Suite 330<br>Berwyn, PA  19312<br>joneil@campbelltriallawyers.com<br>aringstad@campbelltriallawyers.com<br><br>- and –<br><br>Daniel G. Jarcho, Esquire<br>D.C. Bar No. 391837<br>ALSTON & BIRD LLP<br>950 F Street NW<br>Washington, DC 20004<br>Tel: (202) 239-3254<br>Fax: (202) 239-333<br>daniel.jarcho@alston.com<br><br>-and –<br><br>Cari K. Dawson, Esquire<br>Georgia Bar No. 213490<br>Jenny A. Hergenrother<br>Georgia Bar No. 447183<br>ALSTON & BIRD LLP<br>1201 West Peachtree Street NW<br>Atlanta, GA 30309<br>Tel.: (404) 881-7000<br>Fax: (404) 881-7777<br>cari.dawson@alston.com<br>jenny.hergenrother@alston.com | Counsel for Defendant Noramco, Inc. |

| | |
|---|---|
| Robert A. Limbacher, Esquire<br>Adam S. Tolin, Esquire<br>Shook Hardy & Bacon L.L.P.<br>Two Commerce Square<br>2001 Market St. Suite 3000<br>Philadelphia, Pennsylvania 19103<br>215.278.2555<br>atolin@shb.com<br>rlimbacher@shb.com<br><br>-and-<br><br>Ingo Sprie, Esquire<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019-9710<br>Tel: (212) 836-8000<br>ingo.sprie@arnoldporter.com<br><br>-and-<br><br>Ryan Z. Watts, Esquire<br>Arnold & Porter Kaye Scholer LLP<br>601 Massachusetts Avenue, NW<br>Washington, D.C. 20001<br>Tel: (202) 942-5000<br>ryan.watts@arnoldporter.com | Counsel for Defendants Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Par Pharmaceutical, Inc., and Par Pharmaceuticals Companies, Inc. |

| | |
|---|---|
| John N. Joseph, Esquire<br>Abraham J. Rein, Esquire<br>Carolyn H. Kendall, Esquire<br>POST & SCHELL, P.C.<br>jjoseph@postschell.com<br>arein@postschell.com<br>ckendall@postschell.com<br><br>- and –<br><br>Kevin B. Collins, Esquire<br>Steven Winkelman, Esquire<br>Christian J. Pistilli, Esquire<br>John W. Zipp, Esquire<br>John Chase Johnson, Esquire<br>Weiss K. Nusraty, Esquire<br>Megan A. Crowley, Esquire<br>COVINGTON & BURLING, LLP<br>850 Tenth Street NW<br>Washington, D.C.  20001<br>kcollins@cov.com<br>swinkelman@cov.com<br>McKessonPA@cov.com<br>cpistilli@cov.com<br>jzipp@cov.com<br>jcjohnson@cov.com<br>wnusraty@cov.com<br>mcrowley@cov.com | Counsel for Defendant McKesson<br>Corporation |

| | |
|---|---|
| WILLIAMS & CONNOLLY LLP<br>Enu A. Mainigi, Esquire<br>Steven M. Pyser, Esquire<br>Ashley W. Hardin, Esquire<br>F. Lane Heard, III, Esquire<br>725 Twelfth Street, NW<br>Washington D.C. 20005<br>emainigi@wc.com<br>spyser@wc.com<br>ahardin@wc.com<br>lheard@wc.com<br><br>PIETRAGALLO GORDON ALFANO BOSICK &<br>RASPANTI, LLC<br>Marc S. Raspanti, Esquire<br>Douglas K. Rosenblum, Esquire<br>Douglas E. Roberts, Esquire<br>1818 Market Street, Suite 3402<br>Philadelphia, PA 19103<br>(215) 320-6200<br>msr@pietragallo.com<br>dkr@pietragallo.com<br>der@pietragllo.com | Counsel for Defendant Cardinal Health Inc. |
| James T. Kitchen, Esquire<br>JONES DAY<br>500 Grant Street, Suite 4500<br>Pittsburgh, PA 15219-2514<br>jkitchen@jonesday.com<br><br>- and –<br><br>Christopher Lovrien, Esquire<br>Erin Burke, Esquire<br>JONES DAY<br>555 South Flower Street, 50th Floor<br>Los Angeles, CA 90071<br>cjlovrien@jonesday.com<br>eburke@jonesday.com | Counsel for Defendant Walmart Inc. |

| | |
|---|---|
| Edward T. Butkovitz, Esquire<br>Matthew H. Haverstick, Esquire<br>KLEINBARD LLC<br>Three Logan Square<br>1717 Arch Street, 5th Floor<br>Philadelphia, PA 19103<br>ebutkovitz@kleinbard.com<br>mhaverstick@kleinbard.com<br><br>- and –<br><br>Andrew O'Connor, Esquire*<br>ROPES AND GRAY LLP<br>800 Boylston Street<br>Boston, MA 02199<br>andrew.o'connor@ropesgray.com | Counsel for Defendants Mallinckrodt LLC and SpecGx LLC |
| Jami B. Nimeroff, Esquire<br>BROWN MCGARRY NIMEROFF LLC<br>Two Penn Center, Suite 610<br>1500 John F. Kennedy Boulevard<br>Philadelphia, PA 19102<br>jnimeroff@bmnlawyers.com<br><br>- and –<br><br>James W. Matthews, Esquire<br>Ana M. Francisco, Esquire<br>Katy E. Koski, Esquire<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue<br>Suite 2500<br>Boston, MA 02199<br>jmatthews@foley.com<br>kkoski@foley.com<br>afrancisco@foley.com | Counsel for Defendant Anda, Inc. |

| | |
|---|---|
| Coleen M. Meehan, Esquire<br>Elisa P. McEnroe, Esquire<br>Marisel Acosta, Esquire<br>Jacqueline Gorbey, Esquire<br>MORGAN, LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, PA 19103<br>Telephone: (215) 963-5000<br>Fax: (215) 963-5001<br>Coleen.meehan@morganlewis.com<br>Elisa.mcenroe@morganlewis.com<br>Marisel.acosta@morganlewis.com<br>Jacqueline.gorbey@morganlewis.com<br><br>- and –<br><br>Kelly A. Moore, Esquire<br>MORGAN LEWIS & BOCKIUS LLP<br>101 Park Ave.<br>New York, NY 10178-0060<br>Telephone: (212)-309-6612<br>Fax: (212) 309-6001<br>Kelly.moore@morganlewis.com | Counsel for Defendants Rite Aid of Maryland, Inc. d/b/a Rite Aid Mid-Atlantic Customer Support Center, Rite Aid Corporation, Rite Aid Drug Palace Inc., Rite Aid of Pennsylvania, Inc., and Rite Aid of Pennsylvania, LLC |
| James R. Hankle, Esquire<br>Nicholas L. Fiske, Esquire<br>Marjorie F. Bagnato, Esquire<br>Sherrard, German & Kelly, P.C.<br>535 Smithfield Street, Suite 300<br>Pittsburgh, PA 15222<br>412-355-0200<br>jrh@sgkpc.com<br>nlf@sgkpc.com<br>mfb@sgkpc.com | Counsel for Defendant Value Drug Company |

| | |
|---|---|
| Catherine N. Jasons, Esquire<br>Stephen M. Capriotti, Jr., Esquire<br>KELLEY JASONS MCGOWAN<br>SPINELLI HANNA & REBER, L.L.P.<br>1818 Market Street, Suite 3205<br>Philadelphia, PA 19103<br>cjasons@kjmsh.com<br>scapriotti@kjmsh.com<br><br>-and-<br>Christopher J. Stanley, Esquire<br>Douglas J. Pepe, Esquire<br>Gregory P. Joseph, Esquire<br>Mara Leventhal, Esquire<br>JOSEPH HAGE AARONSON LLC<br>485 Lexington Avenue, 30th Floor<br>New York, NY 10017<br>cstanley@jha.com<br>dpepe@jha.com<br>gjoseph@jha.com<br>mleventhal@jha.com<br><br>-and-<br><br>Maura Kathleen Monaghan, Esquire<br>Susan Reagan Gittes, Esquire<br>Jacob W. Stahl, Esquire<br>DEBEVOISE & PLIMPTON LLP<br>919 3rd Avenue<br>New York, NY 10022<br>mkmonaghan@debevoise.com<br>srgittes@debevoise.com<br>jwstahl@debevoise.com | Counsel for Defendants Richard S. Sackler,<br>Jonathan D. Sackler, Mortimer D.A. Sackler,<br>Kathe A. Sackler, Ilene Sackler Lefcourt,<br>Beverly Sackler, Theresa Sackler, David A.<br>Sackler, and Alleged Trust for the Benefit of<br>Members of the Raymond Sackler Family |

10

| | |
|---|---|
| Judy L. Leone, Esquire<br>Christopher R. Boisvert, Esquire<br>Hayden Coleman, Esquire<br>Sara Roitman, Esquire<br>Will Sachse, Esquire<br>Lindsey Cohan, Esquire<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA 19104<br>Judy.Leone@dechert.com<br>Chip.Boisvert@dechert.com<br>Hayden.coleman@dechert.com<br>Sara.Roitman@dechert.com<br>Will.Sachse@dechert.com<br><br>-and-<br><br>Hayden Coleman, Esquire<br>Dechert LLP<br>Three Bryant Park<br>1095 Avenue of the Americas<br>New York, NY 10036<br>Hayden.Coleman@dechert.com | Counsel for Defendants P.F. Laboratories, Inc., Purdue Pharma L.P., Purdue Pharma Inc., and The Purdue Frederick Company, Inc. |

| | |
|---|---|
| Dean F. Murtagh, Esquire<br>Chilton G. Goebel, III, Esquire<br>Lauren A. Green, Esquire<br>GERMAN, GALLAGHER &<br>MURTAGH<br>200 S. Broad Street<br>Philadelphia, PA 19102<br>murtaghd@ggmfirm.com<br>goebelc@ggmfirm.com<br>greenl@ggmfirm.com<br><br>-and-<br><br>Steven F. Napolitano, Esquire<br>Tanya C. Rolo, Esquire<br>Andrew Nadel, Esquire<br>SKARZYNSKI MARICK & BLACK,<br>LLP<br>One Battery Park Plaza, 32nd Floor<br>New York, NY 10004<br>snapolitano@skarzynski.com<br>trolo@skarzynski.com<br>anadel@skarzynski.com | Counsel for Defendants Rhodes<br>Technologies, Rhodes Technologies, Inc.,<br>Rhodes Pharmaceuticals L.P., and Rhodes<br>Pharmaceuticals, Inc. |
| Joshua P. Broudy, Esquire<br>ROSENTHAL LURIE & BROUDY LLC<br>325 Chestnut Street, Suite 800<br>Philadelphia, PA 19106<br>Josh@RLBLawGroup.com<br><br>-and-<br><br>Joseph M. McLaughlin, Esquire<br>Shannon K. McGovern, Esquire<br>Daniel J. Stujenske, Esquire<br>SIMPSON THACHER & BARTLETT LLP<br>425 Lexington Avenue<br>New York, NY 10017<br>jmclaughlin@stblaw.com<br>dstujenske@stblaw.com<br>smcgovern@stblaw.com | Counsel for Defendant Stuart D. Baker |

| | |
|---|---|
| Robert M. Barnes, Esquire<br>Scott D. Livingston, Esquire<br>Joshua A. Kobrin, Esquire<br>Marcus & Shapira<br>35th Floor One Oxford Centre<br>301 Grant Street<br>Pittsburgh , PA  15219<br>412-471-3490<br>Rbarnes@marcus-shapira.com<br>livingston@marcus-shapira.com<br>kobrin@marcus-shapira.com | Counsel for Defendants Giant Eagle, Inc.,<br>Giant Eagle Drugs, Ahold USA Inc., and The<br>Giant Company LLC |
| Neil A. Hlawatsch, Esquire<br>ID NO. 321075<br>REED SMITH LLP<br>Three Logan Square<br>1717 Arch Street, Suite 3100<br>Philadelphia, PA 19103<br>215-851-8100<br>nhlawatsch@reedsmith.com | Counsel for Defendant AmerisourceBergen<br>Drug Corporation |
| John J. Haggerty, Esquire<br>Stephan A. Cornell, Esquire<br>FOX ROTHSCHILD LLP<br>2700 Kelly Road, Suite 300<br>Warrington, PA 18976<br>jhaggerty@foxrothschild.com<br>scornell@foxrothschild.com<br><br>-and-<br><br>William E. Padgett, Esquire<br>Kathleen Matsoukas, Esquire<br>BARNES & THORNBURG LLP<br>11 South Meridian Street<br>Indianapolis, IN 46204-3535<br>William.padgett@btlaw.com<br>Kathleen.matsoukas@btlaw.com | Counsel for Defendant H. D. Smith, LLC<br>f/k/a H. D. Smith Wholesale Drug Company |

13